Good afternoon. May it please the Court, I am Tom Nooter and I'm representing Mr. Timothy Shea on this appeal. I did not represent him at the trial level. Unfortunately, his trial attorney passed away. I was appointed to represent him at sentence and for whatever post-trial proceedings I could do if time limits hadn't gone by. I'm principally asking the Court to remand this case, at the very least, for further inquiry into this question of juror impropriety. I would point out that the well, what happened was on the day after the verdict, the government received an e-mail, which was a second e-mail from a young woman, apparently, who was being mentored by one of the assistant United States attorneys who was actually prosecuting the case, saying that her mother had been on the jury, but further saying that she heard about the case all week, she congratulated the prosecutor on the win, and then pointed out that it's a good thing my mom didn't make that connection, because otherwise she would have had to recuse herself. So it was obviously a recognition that there was a potential for impropriety. What is the relevant misconduct, jury? The relevant misconduct would have to do with having favoritism toward one side of the case. But that seems far-fetched, right? I mean, the evidence of — there is no evidence of that. There's evidence to the contrary. There's evidence that, according to the only person who knows, the daughter, that what she says is her mother had no idea that I knew you, that there was a connection that she had indirectly to the prosecution. So — Yeah, but that's from — she's not the only person who knows. Her mother may know. There may — she may be not credible on the point. But the standard here is you have to show that there is some solid evidence of some kind of misconduct, and if the misconduct is failure to disclose a connection to the prosecutor, there would have to be evidence that that connection was known. And the only evidence that is now available is that it was not known. So there is a solid evidence of some sort of misconduct. What I'm saying is that would have been available had there been a further inquiry. It may have turned out that it was completely — But the standard is to have that further inquiry, there has to be some — it's sometimes said uncontroverted or incontrovertible. I think we've walked that one back. But there has to be some real evidence that there was indeed misconduct, not that there is some reason to suspect there could maybe have been. Right? Well, I would disagree to this extent. And the point I probably should have made more forcefully in my briefing is that in almost all of these cases, with the exception of the Baker case, where a problem with a juror situation has come up, the court will cite that language about how — what a big burden it is to overcome in order to make the inquiry. And then they make the inquiry. They either have the hearing or they remand the case for the hearing. Well, remanded is another question. I'm not sure there are many cases where this Court has sent something back and said, you have to have an inquiry, except where there is evidence of bribery and where — I am going to focus on one. But one of them is, in fact, the Remmer case, which is a U.S. Supreme Court case. It's an old case from 1954, but where they remanded for a continued inquiry. But in the government's brief, I believe at page 11, they cite the United States against Vitaly, which I hadn't really noticed until I was preparing for this argument. Vitaly is a decision of this Court, 459 F. 3rd, 190, from 2006, where the Court did remand for further inquiry. But what's more significant is that the facts of the case, which are a little convoluted, are much more like what is in this case, Mr. Shea's case, than in these various other cases that involve maybe possible jury bribery or something like that. It's a case of relationships, where one of the jurors had a husband with a different name from her name, who turned out to be someone who was known as a colleague from years before, to the spouse or the husband, I guess, of the assistant United States attorney. And so it was a similar kind of thing. And there was nothing more suggested that there had been some kind of improper communication or something like that. And so I would ask you to — Is the evidence that the juror knew anything whatsoever about her daughter's friendship with the assistant United States attorney? There is none. We don't have it because the judge wouldn't let us get it. That's the problem. And to just rely on what — Can I ask you to focus on something else for a moment? I mean, what about where I think there is evidence of at least impropriety in the sense of a violation of the judge's instructions, is that there is strong evidence that the juror spoke to someone else about the case. Now, it's a sort of embarrassing coincidence that that person might have had some connection which she didn't know about either to the — She knew about her relationship with an assistant United States attorney. She didn't know that was the prosecutor in this case. But whoever it was, the mother apparently communicated quite a bit about this case over the course of a week, according to the e-mail. So what about that? I definitely adopt that. I think I did. I mean, I think I did mention it. Is that someone there should be an inquiry into? Yes. Now, again, the Baker case was also kind of about what jurors were doing among themselves. And they said there wasn't enough for an inquiry, apart from the fact that I would disagree with it. It's still a little different from outside — any kind of outside influence. And pretty much these other cases, Moon, Calbas, Sabhani, all involved situations where the court did go ahead and hold a hearing, or the — and it may have been a question of the sufficiency of the hearing, whether it went far enough. But they went ahead to make the inquiry because there was a possible suggestion of outside influence. And because, in fact, it wasn't just any person communicating with the juror, but was a person who clearly had her own view congratulating the government, and — But may I ask two questions, just as a follow-up, just to make sure that I'm — I've got the record right? The request for an inquiry was a very specific request arising from or pointing to the relationship between the donor and the juror. Yes. Right? And then that donor and the prosecutor. Is that right? Exactly. Was there a separate objection, request, concern raised relating to the fact that the juror had spoken to someone outside of the jury? I frankly can't remember whether my predecessor attorney spelled that out. Yeah, no, I understand how you found this argument. But it is — it is in the record. It was a letter he wrote, I think. Because the focus of the request was there's an undisclosed relationship between this juror's and the government. I mean, I have to say that, apart from what Judge Lynch raised, the — that does seem something that should be explored on its own, that it is — That may be true, but my question — That, again, under this vitality question — My question was, was that the focus of the concern or request raised? In other words, that, oh, there's a juror who's speaking to someone outside of — just anyone outside of the jury about the case? I reserved a little time for rebuttal, so I think I can look it up and let you know. Thank you. Rebuttal. But I do think, again —  Oh, sorry. Finish your — I was just going to say the focus of what my predecessor attorney did was he wanted an inquiry into the whole thing. So — Let me ask you. You would agree with the basic proposition that we cannot — one cannot challenge an indictment after trial absent a showing of good cause. That's kind of the basic proposition, right? Yes. All right. Let me go through. I don't want to seem too much of a syllogism, but let me ask you. You concede, as I understand it, that a post-verdict inquiry into allegations of juror misconduct requires, and I quote, clear, strong, substantial, and incontrovertible evidence that a specific non-speculative impropriety has occurred which could have prejudiced the trial. Now, that's a mouthful. I agree. Yes. But you would agree with that proposition. I do agree with it, but I also feel that that was presented here. Well, you also concede that the evidence here was not clear, strong, and substantial, and incontrovertible, right? I didn't really mean to make that concession, and I think in my reply brief I tried to strengthen that a little bit and say that it really is enough to trigger because of, at the very least, just the bias that the relationship suggests, the two relationships suggest would have gone in favor of the government. And, again, I should have cited this Vitale case because, again, I think if Your Honors look through that set of facts, although they are somewhat more complicated, it comes down to the same kind of thing, nothing necessarily transpired that was improper. It is a favoritism because of a relationship situation. And, of course, we always try to eliminate people from a jury who have that kind of favoritism or may have. Let me ask you about your concerns on this sentence. Wouldn't you agree that this sentence is not shockingly high? I do have to agree it's not shockingly high, yes. But it is to me shocking that it's so different from that of the two co-defendants given their respective roles and given the character of my client. You know, I mean, again, these things are all a little hard to parse. But I believe that once the – what I would suggest is that once the judge did consider disparity issues among defendants, which this Court has said is permissible, it's not required, that it had to be done in a more complete way. We've reserved some time for rebuttal. So we'll hear from Mr. Wickstrom. Are you related to Mr. Wickstrom, who's usually on that side? Yes, I am, Your Honor. He's my dad. And to the extent he's listening right now, he was pretty thrilled by that question. So thank you. May it please the Court, Derek Wickstrom, I represent the United States on this appeal. I want to pick up with the heard-lots-about-it-all-week remark from the email that the panel was focused on during Mr. Nutter's presentation. First, Judge Loyer, to answer your question, the defense did raise in a sentence that appears at Appendix 333 through 334 a request to inquire of the juror and of Person 1 the substance of the discussions during the week. So that was a request the defense made. Now, Judge Torres noted in her decision that there were innocent inferences that could be drawn about that phrase, that the juror and Person 1 discussed the juror's jury service generally. And Judge Torres credited the potentially innocent inferences on the ground that there's a strong presumption that jurors comply with their instructions. And Judge Torres repeatedly instructed the jury here not to discuss the substance of the case before deliberations began. That's consistent with this Court's decision in Baker, which says that where there are multiple possible inferences that can be drawn, one being consistent with instructions and one being inconsistent, that this Court will draw the inference that's consistent with the notion that jurors follow their instructions. But even drawing a contrary inference, even drawing the inference that the juror, in fact, did discuss the substance of the trial contrary to the instruction, Baker makes clear that that wouldn't be sufficient by itself to justify an inquiry. In Baker, there was far more concrete evidence than there is here that jurors had declined to follow the Court's instruction not to talk about the case prior to deliberations. In fact, in Baker, there was a juror reached out to defense counsel to say that the jury had discussed the case, quote, during virtually every break. And despite that, this Court held that that was not the required clear, strong, substantial, and incontrovertible evidence of a specific nonspeculative impropriety, because it was not — there was no evidence before the Court prior to the request for an inquiry that showed that the jury had been influenced by those discussions. The same result is appropriate here. Baker compels the same result here, because, one, there are available innocent inferences, as Judge Torres held, and, two, even if the jury — even if the juror did discuss the case, that violation of the Court's instructions is not — is not clear, strong, substantial, incontrovertible evidence of a specific nonspeculative impropriety. With respect to Mr. Nutter's bias point on which he's focused, I do want to make a couple of points. One is, he says that, you know, the defense might have sought to exclude the juror had it known about this relationship. But, of course, that's not the test. If there had been some voir dire question that the juror answered falsely, knowingly falsely, then the relationship would still have to give rise to a cause challenge in order to justify striking the juror or in order to justify going back to the district court for an inquiry. Here, Mr. Nutter relies on the Vitale case, but the Vitale case really is different, and I just want to address that briefly. In Vitale, the — there was an assistant United States attorney whose husband was a co-worker of both the challenge juror and the challenge juror's husband. That husband, the AUSA's husband — But this is the United States attorney who — Who was trying the case. So — And on that record, this Court remanded for a hearing, relying on Supreme Court case law, saying that the prosecutor's failures to disclose that known connection with the juror during voir dire necessitated a hearing. That's — that appears at pages 197 through 200 of the Vitale decision. That is not this case.  The court said here, had no knowledge of this relationship until after the trial, so there's no disclosure issue. And for that reason, Vitale does not necessitate a hearing here. Unless the Court has any questions about this or about any of the other issues presented in the case, I'll otherwise rest on my submissions. Thank you. Thank you, Your Honors. Again, I would only focus on the fact that each of these cases rests on its own individual facts. There are always going to be some facts that are a little different from any other situation. I do think the Baker case, which is the strongest case, I think, on the government side, in a sense, as it involved discussions among jurors, among themselves, is a very different kind of problem than the possible problem of outside influence or bias because of an outside relationship. And therefore, again, it's — to say, as was quoted by counsel for the government, to say that there are favorable or innocent inferences that could be drawn from the amount of evidence that the judge had before her as a result of the government sending a letter to her about this isn't a good excuse for saying there shouldn't be an inquiry if there's also a possibility of a negative inference. And in addition, there wasn't much revealed. There were two e-mails, for example, one of which was from the second day of the trial between the mentee and the assistant United States attorney. That was not revealed to the defense. Obviously, the government knows what's in it, but it wasn't revealed to the defense or I think the court could have — I don't know. I mean, again, we'll have to look at A334, which is the request made by the defense. I don't think he got that specific. He wanted a general inquiry into the whole thing. And presumably that would have normally involved bringing out all of the communications between the two sets of parties, the AUSA and the mentee, and the mentee and her mom. Thank you very much, as always, Mr. Duda. Thank you very much, Your Honor. We will reserve the decision.